UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:19-CV-00053 -LLK

NICOLE STUMPH                                                                    PLAINTIFFS

v.

SPRING VIEW PHYSICIAN PRACTICES, LLC., *et al.*                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

The parties consented, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to have the undersigned Magistrate Judge determine all dispositive and non-dispositive matters in this case, with any appeal lying before the Sixth Circuit Court of Appeals. [DN 14].

This matter is currently before the Court on Plaintiff Nicole Stumph's Motion to Compel to supplement responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, [DN 48], and on the Motion for Protective Order brought by Spring View Physician Practices, LLC, ("Spring View"), [DN 49, 50]. Plaintiff filed her Motion to Compel on July 24, 2020. [DN 48]. On August 21, 2020, Defendant responded and filed their Motion for Protective Order. [DN 49, 50]. On August 28, 2020, Plaintiff filed both a reply to Defendant's response and a response to Defendant's Motion for Protective Order. [DN 51]. The Defendant then filed a reply in support of its Motion for Protective Order on September 4, 2020. [DN 52]. Further, the Court ordered additional briefing on several discrete issues on September 29, 2020. [DN 57]. Having received the Plaintiff's and Defendant's briefing on these issues, [DN 60, 61], the motion is now fully briefed and ripe for adjudication.

For the reasons set forth herein, both the Plaintiff's Motion to Compel, [DN 48], and Defendant's Motion for Protective Order, [DN 50], are **GRANTED IN PART** and **DENIED IN PART.**

### Relevant Background

This matter arose from two alleged incidents of sexual misconduct by Defendant Dr. Samuel Kriegler, an employee of Spring View, at Spring View's offices.  Plaintiff Nicole Stumph alleges that she was the victim of unwanted sexual touching from Defendant Kriegler during her patient visits.  [DN 1-2 at 2].  Plaintiff alleges that Defendant Kriegler "touched the private areas, buttocks, and breasts of the Plaintiff" during her patient visits on January 18, 2018 and January 24, 2018 and that "such touching was offensive and unwarranted."  *Id*.  Plaintiff brings claims against Defendant Spring View for negligent selection, retention, supervision, and training of Defendant Kriegler, resulting in Defendant Kriegler's actions while functioning as its agent/employee.  *Id*. at 3.  Plaintiff brings claims of battery (Counts I & II), outrage (Count III), negligence (Count IV), and for punitive damages (Count V) against Defendant Kriegler.  *Id*.  On January 18, 2019, Defendant Kriegler removed the case from the Marion Circuit Court.  [DN 1].

Since then the parties have proceeded with discovery, including depositions, interrogatories, and document production.  Plaintiff filed her Motion to Compel on July 24, 2020.  [DN 48].  Therein, Plaintiff argues that the Court should compel Spring View to supplement its responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents.  *Id.*  On August 21, 2020, Defendant responded and filed a Motion for Protective Order.  [DN 49, 50].  Defendants argued that the requested documents and information were privileged and confidential, based on KRE 311.377, KRE 503, FRE 407, FRE 404 and HIPPA.  *Id.*  Though not argued in their

briefing, Defendants also asserted that a confidentiality agreement between Spring View and Dr. Kriegler protected documents.  [DN 48-4].  Further briefing on this issue consisted of Plaintiff's reply to Defendant's response and response to Defendant's Motion for Protective Order filed August 28, 2020, [DN 51]; followed by Defendants reply in support of its Motion for Protective Order on September 4, 2020, [DN 52].

Following this, the Court ordered additional briefing on several discrete issues on September 29, 2020.  [DN 57].  The parties briefed the requirements of KRS 311.377 and whether Spring View met those requirements, the application of KRS 311.377 on the evidence in question, the bearing of recent amendments to KRS 311.377 to its application, and the application of HIPPA to the evidence.  [*Id.*, 60, 61].

**Standard**

A party may obtain discovery of any non-privileged matter that is relevant to any issue in the case, or reasonably calculated to lead to matter relevant to any issue in the case.  Federal Rule of Civil Procedure 26(b)(1) states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A party "resisting discovery bears the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Int'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007).  To resist Plaintiff's discovery that appears relevant, "Defendant bears a heavy burden of demonstrating that disclosure will work a

clearly defined and very serious injury." *Id.* (citing *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323, 326 (S.D.Fla.1985).

Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). However, the scope of discovery is not unlimited. "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id*. (quoting FED. R. CIV. P. 26(b)(2)(C)(iii)). The determination of "the scope of discovery is within the sound discretion of the trial court." *Cooper v. Bower*, No. 5:15-CV-249-TBR, 2018 WL 663002, at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

**Discussion**

Plaintiff's Motion to Compel requests that the Court compel Spring View to supplement its answer to Interrogatory No. 17 with a full explanation of all prior complaints and that it provide full, unredacted copies of: SVU 000112-000114, SVU 000115, SVU 000116-000117, SVU 000118-119, SVU 000201, SVU 000194-200, SVU 000202, SVU 000203, SVU 000204, and SVU 000205-206. Defendant's Motion for Protective Order, likewise, seeks protection of these same materials under KRS 311.377, a confidentiality agreement between Defendants, FRE 404 and 407, KRE 503, Work Product, and HIPPA.

**A. KRS 311.377**

The parties do not dispute that Kentucky law applies to the claims before the court, and the Court agrees that Kentucky law is appropriate. This suit is in federal court based on diversity jurisdiction. [DN 1]. Thus, the substantive law of the state in which the court sits will apply. *Novolex Holdings, LLC v. Wurzburger*, No. 2:19-CV-145-DLB-CJS, 2020 WL 4758360, at *3 (E.D. Ky. Aug. 17, 2020) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Specifically, this applies to privilege issues such as this one. FED. R. EVID. 501; *See In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006).

The Court must determine whether Spring View is protected under the statute, and whether the statute protects these specific documents. First, KRS 311.377 applies to employees performing a designated professional review function as part of a patient safety and quality improvement initiative. Here, Defendants attest that this is precisely what Heather Lamkin was engaged in when conducting her interviews and preparing her report, [DN 60], which is all the law requires. Therefore, where a Spring View employee was properly engaged in a designated professional review function as part of a patient safety and quality improvement initiative, KRS 311.377 will apply to that work product.

Second, KRS 311.377 applies to the documents in dispute. The Court notes that this is a novel issue, as the Kentucky Legislature has recently changed the language of the law. Beginning with Sweasy, itself the third occasion on which the Kentucky Supreme Court revisited this issue, the Court found that the statute either excluded malpractice claims or violates Section fifty-one of the Kentucky Constitution. *Sweasy v. King's Daughters Mem'l Hosp*., 771 S.W.2d 812, 816 (Ky. 1989). Section fifty-one would have been violated where the reenactment title was insufficiently related to a medical malpractice claim. *Id.* At that time, the title of the act was "AN ACT relating

to the establishment of certificate of need, licensing and regulation of health facilities and health services."   So, KRS 311.377 discovery protections were held to apply to "any civil action;" interpreted not to include a patient's malpractice action—therefore, the constitutional issue was not faced.

This reasoning has been upheld by the Kentucky Supreme Court on multiple occasions. *See Appalachian Reg'l Health Care, Inc. v. Johnson*, 862 S.W.2d 868, 870 (Ky. 1993); *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 470 (Ky. 1998), *as amended* (Mar. 3, 1999); *McFall v. Peace, Inc.*, 15 S.W.3d 724, 726 (Ky. 2000).  In the most recent case, the Court specified that: "if Kentucky's legislature found that this Court's decision in *Sisters of Charity Health Systems, supra,* truly frustrated the purpose of KRS 311.377(2), the legislature has had over ten years to amend that statute to include a clear, unmistakable prohibition against discovery of peer review documents in malpractice suits against healthcare providers."  *Saleba*, 300 S.W.3d at 183–84.

Following this decision, the legislature reenacted KRS 311.377 in 2018; adding the words: "including but not limited to medical malpractice actions[.]"   KRS 311.377.   And the prior constitutional issues are not faced in this case, where the title of H.B. 4 was "AN ACT relating to the privileging of peer review activities in health care."  Therefore, the protections of KRS 311.377 now extend to medical malpractice suits.

However, since the privilege only exists during the performance of a designated professional review function, it is narrowly applied.  KRS 311.377(3) specifically provides that items used in these proceedings are not privileged if they are subject to discovery independently of the professional review function.  Thus, as applied to the disputed items, the privilege extends only to the committee report and investigative interviews conducted.  Information and documents

that are clearly discoverable are not entitled to the protection of KRS 311.377(2) merely because they are placed in the file. *Leanhart v. Humana Inc*., 933 S.W.2d 820, 820–21 (Ky. 1996)

Defendants assert that Leanhart has been abrogated. This is not so. The relevant language of section three is unchanged and states: "Nothing in subsection (2) of this section shall be construed to restrict or limit the right to discover or use in any civil action or other administrative proceeding any evidence, document, or record which is subject to discovery independently of the proceedings of the entity to which subsection (1) of this section refers." KRS 311.377(3).

### B. Confidentiality Agreement

Defendant asserts a confidentiality agreement between Defendants Spring View and Kriegler protect his letter of resignation. Other Federal Courts in the Sixth Circuit have found that confidentiality agreements should not protect otherwise discoverable documents. *See Long v. Am. Red Cross*, 145 F.R.D. 658, 667 (S.D. Ohio 1993) ("[T]he fact that such an agreement exists would appear to carry little weight in terms of whether the Court should order disclosure of the information."); *I.E.E. Int'l Elecs. & Eng'g, S.A. v. TK Holdings Inc.*, No. 10-13487, 2013 WL 12183637, at *1 (E.D. Mich. June 24, 2013) ("To conclude that confidentiality agreements bar such discovery 'would clearly impede the truth-seeking function of discovery in federal litigation as all individuals and corporations could use confidentiality agreements to avoid discovery.'") (quoting *In re Subpoena Duces Tecum Served on Bell Communications Research, Inc.*, 1997 WL 10919 (S.D.N.Y. 1997)). Confidentiality agreements between co-defendants do not protect these relevant and unprivileged documents and thus the document must be produced.

### C. Federal Rule of Evidence 404 and 407

The Court rejects the position of Defendants, that discovery requests related to evidence of Dr. Kriegler's prior bad acts is irrelevant or inadmissible. As this Court previously ruled,

"information tending to show a pattern of similar behavior by Defendant Kriegler" and "information tending to show past similar actions by Kriegler, while he was

employed by Defendant Spring View, could be relevant to Plaintiff's claims." [DN 39]. Further, "[r]elevant information may be obtained even if such information is not itself admissible at trial. *Migliore & Assocs., LLC v. Kentuckiana Reporters*, LLC, No. 3:13-CV-315-H, 2014 WL 12725945, at *5 (W.D. Ky. June 4, 2014). And as stated previously, while this Court will not make a judgment on further proceedings, this evidence could very well be admissible at trial. [DN 39].

Similarly, Spring View assert that documents related to Dr. Kriegler's administrative leave and resignation are not admissible. But this is not the relevant inquiry, since Plaintiff is moving to compel the documents for discovery purposes and it is too early to predict how they will use the materials. As this court has found before, Rule 407 "governs the admissibility of evidence," not "pretrial discovery," consequently is has no bearing in determining the discoverability of the documents at issue. *Merriweather v. United Parcel Serv., Inc.*, No. 3:17-CV-349-CRS-LLK, 2018 WL 3572527, at *11 (W.D. Ky. July 25, 2018) (quoting *Laws v. Stevens Transp., Inc*., 2013 WL 941435, at * 3 (S.D. Ohio Mar. 8, 2013)), it has no bearing in determining the discoverability of the documents at issue. Additionally, Defendant's authority relies on the Kentucky Rules of Evidence which are inapplicable to this issue. FED. R. EVID. 1101.

Discoverability is a question of whether the sought material is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Here the documents and interrogatory on Dr. Kriegler's leave and resignation could confirm a similar set of facts, as alleged by Plaintiff. Thus, the documents and supplementation of interrogatory are relevant.

### D.  Kentucky Rule of Evidence 503

Kentucky Rules of Evidence, like KRS 311.377, will be analyzed under state law.  FED. R. EVID. 501; *See In re Powerhouse Licensing, LLC*, 441 F.3d at 472.  Spring View asserts that attorney client privilege protects the investigation of third-party complaints.

Under the Kentucky rule "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."  KRE 503(a)(5).  It is true that the Rule extends beyond merely the client and lawyer, to include representatives of the client and lawyer who are considered essential to the rendition of legal services.  KRE 503(a)(2)-(4) and (b)(1)-(5).

However, in this case, the assertion of privilege is in the complete absence of any communication with attorneys—indeed, Spring View seeks protection for information completely independent of anything that might be considered legal services.  Defendants cite to *Collins v. Braden* to support their theory that all information collected might be privileged, however, the decision makes clear: "It protects only the communication to the attorney.  It does not protect any facts or claims reported to the attorney in those communications from all discovery."  384 S.W.3d 154, 159 (Ky. 2012).

### E.  Work Product

Rule 26(b)(3) protects "(1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative'.  *Migliore*, 2014 WL 12725945, at *5 (quoting *In re Professionals Direct Ins. Co.*, 578 F.3d 432 (6th Cir. 2009))

Importantly, the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document."  *Id.* And

9

here, Spring View has not met this burden.  The driving force behind these documents, created in its designated professional review function, is not the defense of litigation, but, instead, to protect patients and restrict incompetent behavior.  Thus, documents evidencing other complaints and claims against Defendants are not protected by work product doctrine.

### F.  HIPPA

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") protects patient privacy by preventing healthcare providers from disclosing protected healthcare information.  Defendants assert that the disclosure of prior complaints and correspondence regarding prior complaints would violate HIPAA.  [DN 51].  There are two issues in the disclosure of these documents and information: whether they are sufficiently relevant and whether HIPPA permits the disclosure.

First, as this Court has previously cautioned, when dealing with a non-party, "the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party."  [DN at 4] (citing *Medical Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013).  Even with heightened caution, the information and documents regarding these prior bad acts goes to the heart of the complaint.  "Clearly, [Plaintiff] is entitled to discover the names and other identifying information of the complaining parties as a part of the discovery process."  *Leanhart*, 933 S.W.2d at 821 (citing CR 26.02).

Second, HIPPA allows a covered entity, such as Spring View, to disclose protected healthcare information "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by

such order." 45 C.F.R. § 164.512(e)(1)(i). Therefore, HIPPA does not prevent disclosure in this instance.

The Court, having reviewed the parties' briefing in this matter, arguments from counsel, the record, and being otherwise sufficiently advised, **IT IS HEREBY ORDERED:**

1. Defendant shall supplement their responses to Interrogatory No. 17 and produce the following documents: SVU 000112-000114, SVU 000115, SVU 000116-000117, SVU 000118-119, SVU 000201, SVU 000194-200.

2. Defendant Spring View shall produce prior patients' complaints, subject to the following conditions:

   a. The parties are permitted to use the documents for the purposes of prosecuting or defending this action and any resulting appeals, which includes disclosing the documents to the parties' attorneys, expert witnesses, consultants, court personnel, court reports, copy services, trial consultants, and other entities or persons involved in the litigation process;

   b. The parties and their attorneys are prohibited from using or disclosing these documents for any purpose other than this litigation; and

   c. The parties and their attorneys are required to either return all copies of these documents to Defendant Spring View or destroy them at the conclusion of this litigation.

   d. The Parties are Ordered to redact all names or any personal identifiers of non-party complainants in all public filings.

**IT IS SO ORDERED**
February 4, 2021

c:      Counsel of Record

**Lanny King, Magistrate Judge**
**United States District Court**

11